Case number 110033, Maksym & McMahon v. Board of Elections I'm here on behalf of the appellants, Burton S. Olson, Dennis J. Denny, and James A. And you will be the only one arguing for your side, is that correct, Mr. Olson? Yes, it is. I'm Kevin Ford, Your Honor, and I'm here for your court. I have the lead with me is Michael Ford and Michael Casper. And you will be the only one... I will be the only one arguing for the appellant. Excellent. Good morning, Your Honor. James Keen on behalf of the Board of Elections Commissioners of the City of Chicago. Commissioners, we are standing on the record that we will not be arguing. Thank you, Counselor. Mr. Olson, please proceed. Thank you, Madam Justice. Justices, may it please the Court. The question on what this case is all about is what the rule of law is going to be at the end of the day. This case is beyond and above the people involved. What is the rule going to be for policemen, firemen, sanitation workers, and candidates for office? When you apply for a job in Chicago or for that matter any municipality in the State of Illinois that has a residency requirement, whether that job be mayor or alderman or policeman, what will count? Your physical presence and your permanent abode? And all of those life characteristics that we know that get poured into that foundation of your abode? Or is it what you believe in your mind, your internal intent? I would submit to you that if you don't have the container, the foundation, the abode, then you have nowhere to put the other elements of residency. We will then have a situation of apartments being rented by city employees and then in turn renting them out and moving to the suburbs, all with the internal intent to return, which may or may not happen. So this case is really about specifically applying the 91 uncontested stipulated facts and the testimony to the applicable statute and applying the law. What do we know about the law? We know that residence means permanent abode, the principal dwelling place of a person. We know that two elements are necessary, physical presence and an intent to remain there as your permanent abode. We know physical presence means a right to occupy. Not that you have to sleep there 365 days a year, but a right to occupy that premise as your permanent abode. Park v. Hood taught us that a real and not an imaginary abode occupied as a candidate's home or dwelling is essential to satisfy the qualifications prescribed by law. We know an individual may temporarily depart his residence, but he loses his residence through actual abandonment when he relinquishes his legal right to occupy the property or the premises. What's the strongest case you've got for that proposition? The Park v. Hood and the three Supreme Court cases right around the same time in 1938, 1940, 1941. What's the strongest case involving a candidate that you have for that proposition? The cases that have traveled to the modern era through the Park v. Hood cases that deal with residency, all deal with the intent to remain in having an actual residence. The cases cited by ourselves in our briefs in regards to a candidate abandoning his residence, the Delano View case and cases of that sort, really deal with cases where people have two residencies, dual residencies, and the courts have to determine through all of the facts which is their permanent abode. Mr. Emanuel in this case lost his right to occupy his hermitage residence in Chicago by leasing it to the renters, the Halpins, during the statutorily required year of residency. What we know here, Justices, is that the surrounding circumstances should be accorded more weight than the declarations of intent. Mayor Daley announced he would not run for re-election on September 7, 2010. That's a very important date. At that point, Mr. Emanuel had lived in D.C. for 20 months. His family had lived in D.C. for 16 months. Virtually all of their everyday necessities. What did the court mean in Park v. Hood when it turned around and said, it's necessary that voters show a place of residence or a permanent place of abode for the statutory period which he has not abandoned, but which he occupies as an abode or, in the disjunctive, to which he intends to return. What does it mean? What's the or to which he intends to return? It means that he needs the intent to return to a permanent abode. The or is connected to the first part of the sentence saying that if you don't have a place to return to, your intent really means nothing. But you need the intent as long as you have the first prong of the two-part sentence. Counsel, you don't disagree that the candidate was a resident of the City of Chicago on January 2, 2009? I do not. I agree. So then what is the intervening factor that caused him to lose his, no longer reside in or lose his residency in Chicago? When he and his wife moved to Washington, taking their children. Wait, can you just stop the music? When he moved by himself in January, are you saying it's then or is it in June when he or his family joined him? No, I'm saying it's in June. So from January to June, you're saying he's still a resident of the city because his family still literally lives in the hermitage address? Yes, Madam Justice. I am saying that because he could return and he did return back to visit with his family in his permanent abode, the hermitage address. You're saying he abandoned, I'm sorry, go on, Justice. So you're saying he abandoned the residence in June? In June 30th, when they left and the home was rented, I believe the day of September 1st of 2009, when the Halpins moved in with their family and moved all of their possessions. In my hypothetical, with that set of facts, in June, what if his family stayed there? And he never went back from January until October of this year, of last year. If his family still lived there, if they never left the residence, has he abandoned the residence? No. Unequivocally no. Because, and we use the example below, and we use it in our brief, just as the President of the United States or David Axelrod or others who went to work in Washington did not abandon their homes, they did not leave their homes. They have their homes here, they come back, they stay in their homes, they have a place to return to. So to answer your question, if the home had not been abandoned by the whole family, literally cleaned out except for some storage in the basement, we wouldn't be here today. So then there was that storage. I just want to finish that one point. So, because he, hypothetically, he could not afford to keep a place in Washington and to keep his family here and to maintain his residence on Hermitage without renting it out. But he had every intention to come back. Has he still abandoned it? Because he just doesn't have the money to take care of two places. If he had either sold or rented it like he did? Yes. If he just rented it out because he couldn't afford to have two different places. That's a tough hypothetical because we know that he may not. Money really wasn't an issue here. You're saying this goes to everyone. So if he didn't have the money to keep both homes, but he had every intention of going back there, he needed the money to pay the mortgage there. Then has he abandoned his residence? Yes. If he has no physical place to return to, if he has no place... You mean any day that he wants to? Anytime he wants to. That is absolutely correct. So if he had a month-to-month lease as opposed to a year, what would happen? That could be a little bit different fact scenario. During that month, if he could not get in and he had no other place, then there would be an abandonment. Mr. Odelson, if I have a permanent place of abode in the city of Chicago, and I have a residence there, and I temporarily leave, am I always intending to return? Have I satisfied the statute? I have to ask you a question, Justice. What did you do with that place in Chicago? Is it just sitting there vacant? Did you rent it? Then you have a place to return to, you have not abandoned your residence. Okay. Now, the statute says, no elector or spouse shall be deemed to have lost his or her residence in any precinct or election district in this state by reason of his or her absence on business of the United States or this state. Correct? Correct. What does that mean? That's for voting purposes, and I was going to deal with that. Well, let me ask you the question. Let's answer the question now. If, as you suggest, I have a permanent place of abode, it's vacant, and I go to work somewhere else temporarily, always intending to return, what do you need, no elector shall be deemed to have lost his or her residence in any precinct of this state by absence on business of the United States? Why do I need that? I don't need it at all. As long as you have the mental intent. So now the question is, what is the purpose of this section? That section was passed in 1943. It was passed for our servicemen and women who went overseas, so that they would have a right to vote. That's under the section marked Qualification of Voters. That's in the election code. I understand. The purpose of that was to, if our people, if our men and women were overseas for more than a year or two years, and they didn't have a residence. But if they left, always intending to return, and they had a place to return, they don't need this. And the cases say that the provision is an exception to the requirements of 3-1. 3-1 requires permanent place of abode, intention to return. You must have been here to start out with. This is an exception to that. That's correct. What portion is an exception to? The maintaining of the permanent place of abode? Yes. Well, then in that particular case, Mr. Emanuel wouldn't have had to maintain his permanent place of abode in order to remain an elector here if he was out on business of the United States. I agree. Okay, so he's an elector. He's an elector. So he satisfies the first half of the conjunction in the municipal code. He is an elector. Not in this case. Why not? Because he didn't have a permanent abode. But he's an elector in the first part. He abandoned his permanent abode. Whoa, whoa, whoa. Slow down a second. You can't run with the hounds and hide with the foxes. No, you can't. One or the other, what does it mean to say that no elector shall be deemed to have lost his residence in any precinct by reason of his or her absence? Now, if you tell me and you concede the point that if I absent myself, I have a permanent place of abode and I always intend to return, I never lose my status as a voter. Is that correct? No. It's not correct. No. Why do I lose it? If you have rented your premises out. Because when we started the hypothetical, that premise was vacant. Yes. If that premise is vacant, I go here. The only way that this can make sense is this means if he's given up his permanent place of abode. In that particular case, this is an exception to 3.1. I agree. He's not required to have a permanent place of abode in order to remain an elector so long as his absence from this state or this precinct or district is not in the business of the United States. Well, I would answer that by saying two things. One, there's a real question as to whether being Chief of Staff is the business of the United States. Since it was passed in 1943 for a- Who in heavens was he, the Chief of Staff? The President of the United States. He works for the United States, doesn't he? He worked for the President of the United States. Who does he get paid by? He gets paid by the federal government, just like the- Okay. Let's get this down to some real stuff. Assume he's an elector. He satisfies everything for an elector because he's out of this jurisdiction on business of the United States. Now tell me why he doesn't satisfy the second half of the conjunction, that is to say he has resided within the municipality for one year. Tell me why he doesn't satisfy that. And satisfy that under the Municipal Code regarding qualifications for elective office. He doesn't satisfy that because he has no place to come back to during the year, February 22, 2010 to February 22, 2011, during the year that the statute requires you to reside in the municipality. That's why he doesn't qualify under the Municipal Code. And I agree with you in regards to using the Election Code in regards to his entitlement to vote, which of course is a very fundamental right. Which is the first right for the conjunctive privilege. So then you do agree that he was a qualified elector? I don't, not in this case. I'm sorry. That's what I thought I heard you say. No, because he can't vote from a house he doesn't live in. The Halpins vote there too. So how many more people can vote from that house? But what is necessary to be a qualified elector? You have to reside in the precinct for 30 days prior to the election. And has he or has he not done that? No, he did not. Even now? Even now. Now he lives at 754 Milwaukee. And so has he done that now? Now he is an elector. Thank you. Mr. Olson. Yes, sir. Would you like to tell all of our servicemen and women overseas that because they gave up their homes when they went into the service, they are no longer qualified electors in the city of Chicago, and that they cannot vote? No, they can't vote. Why? Even if they have no residence. Why can they do that? Because they're in service to the United States. They can't vote. And if Mr. Emanuel was in service to the United States, why doesn't it apply to him too? If he's in service to the United States, then we would concede that. Okay. So your theory is he doesn't work for the United States. He's not in service to the United States. He's not an ambassador. He's not a serviceman. Okay. Assume we reject your notion on that issue, then he is a qualified elector. Is that right? Yes, sir. Okay. Let's go to the second half of the conjunction and tell me why he is not a qualified candidate vis-a-vis the phrase that says that he has to live with him, has resided in the municipality at least one year and that's preceding the election. Because he did not, really simply, because he did not reside in the municipality for one year prior to the election. He had no place to reside here. He testified. He came back here maybe three times, stayed in hotels. He rented. He leased his hermitage home as rental property, received $5,000 a month, and he, his wife, his children never went back there during the entire time they were in Washington. They still are not back there. They're still in Washington until at least June 30th of 11, because that's when they extended their lease to, and the Halpins have exclusive possession of the hermitage home. They live there. Let me see if I get this straight. If he is on business of the United States, he doesn't need a permanent place of abode in order to qualify as elected, but he does need a permanent place of abode to qualify as a candidate. Yes, sir. That's your argument in a nutshell, is it not? Yes, sir. Okay. It is. And I have a question. In terms of the qualifications for elected office, the same section that we're discussing, is there any case that is defined what in Section A means as resided in? Any case whatsoever? The cases that we cited, the cases from the 30s and 40s, in regards to what a residence is. A resided in certainly could be different than a residence. So I'm asking is there a case that defines this term? I don't know of a case that uses those words resided in. The cases that we refer to. Do you see a distinction between reside in and residence? Yes. In order to reside anywhere, you have to have a place to reside. It doesn't have to be a home. It could be an apartment. You could be homeless as long as you have a place to reside. So to reside in, you must have a place to go to. There's a case that we cited where people, their house burned down. They moved out while their house was being built. Well, they had a place to go. That was the hypothetical I was going to point to. So if you could be homeless and could reside in, then why is it that this candidate who had leased his armitage home to someone else and from your perspective was homeless, why is it that he could not still reside in the city of Chicago in light of his stated intentions? Because he was not homeless. All the facts that I was going to get to relative to what his declarations and what the evidence showed was that he was residing in Washington, D.C. His income tax returns, his voter registration card that was bounced from Hermitage to Washington and back to the Board of Elections, his homestead exemption. He was not homeless. He was living with his family as he declared. There are a plethora of facts on the other side of that as well in terms of his connections with the city of Chicago, that he voted here, that he paid his homestead exemption, et cetera, et cetera, that that was property left at the Hermitage address. I mean, there are many other facts on both sides. But we've read all the facts. Okay. And the facts I was going to relate, which I have, are pertinent to where he was residing in. Where was he a resident of? He himself declared he was a resident of Washington, D.C. in his Washington, D.C. tax returns and his Illinois tax returns. It wasn't until after the September 7th announcement by the mayor that he amended his Illinois returns to say, well, now I'm an Illinois resident. Mr. Olson, your time has expired. You'll have five minutes in rebuttal. Thank you. Please report. I'll expect a cause. Counsel, you're competing with LaSalle. We cannot hear you. I will respect your admonition that you've read the briefs. I also can tell from the questions that you are very familiar with the extensive factual findings that were made by the Board of Election Commissioners before they finally approved the candidate and allowed him to remain on the ballot. After they did that, Commissioner Collin, a very experienced commissioner and lawyer, said after reviewing that record, this is an easy case. And then he went on to say why. The chairman of the board at the conclusion of that hearing made some other comments that I think are appropriate here. Chairman Langdon Neal said the principle that guides us in our decisions as an electoral board is ballot access. We try to grant ballot access. We believe ultimately it is up to the voters to decide the issues here. And I think that's very appropriate here. And we have cited cases where the court should favor ballot access in resolving these issues. In close cases, I respectfully submit this is not a close case. Over 90,000 people signed petitions. Mr. Field, I want to cut you a little. You only have 20 minutes, and I want to get to the issues. Okay. Not the public policy. Let's just get to the issues. Is it your contention that in 3-1, the election code, the phrase who has resided is a synonym with residence? Yes. You think it's a synonym? It means the same thing. If you have resided in the district, the election area, and then it goes on to say if you're away on the business of the United States, But that wasn't my question. My question was are the two terms synonyms? If I reside in Rockford, and I own a home in Rockford, and I always intend to return to Rockford, but I come to the city of Chicago for a period of five months on temporary employment, can it be said that my residence is in Rockford, but for that temporary period I resided in Chicago? I don't think so. I didn't reside here? I don't think so. Where did I live? Your residence. If we're talking about the legal definition of residence, and some of the cases say, well, residence is used rather loosely, but if we're talking about legal residence in terms of relating it to the obligations of citizenship and the rights of citizenship, then you're a resident of Rockford. You're living in Chicago. You're visiting in Chicago, just like Mr. Emanuel was living in Washington, D.C., while he was on business of the government in Washington, D.C., but he resided in Chicago. I don't think anyone disputes the fact that I'm a resident of Rockford. My question is, for the temporary period of time, don't I reside in the city of Chicago? Webster says to live is to reside. They are synonyms. So I live in the city of Chicago for the four months where I reside here, but I'm a resident of the city of Rockford. What's the difference? I have a permanent place of abode in Rockford. I have no permanent place of abode here. Is that the difference? It depends, again. It depends on the statute, why you're asking, because what's the difference? I was only asking in relation to 3.1. No, I don't think that that individual is a resident of Chicago. I didn't ask if he was a resident. I asked if he resided here. He resided here. I'm thinking back. There's one of the cases that you've probably read recently in this mix of what Justice Dan Ward writes about how it can mean different things. I think it might have been one of the police cases. But the point so far as that statute is concerned, no, I don't think that that individual resides in Chicago. I think that his residence is Rockford. So who has resided means has a residence. He has residence. For purposes of that statute, I believe so. Now, can you talk to me a little bit about has resided in the municipality at least one year, and that's preceding the election, vis-a-vis the second half of the conjunction, and the requirement for running for office. What does the has resided mean to you? Have a residence. Legally be a resident. So, in other words, be a resident for voting purposes. Well, I believe it's for voting purposes, yes. Be the same. Be the same. Okay. Then why do we need D for service, men and women? What was the purpose of that? What is the purpose of that? Just so there would be no question about it. There wasn't any question about it when you got to the second half, when you got to 3.2? I think, look. Is it a superfluous statute? I think it can be. But I know this, in this particular case, it closes the book. But my opinion, which we wouldn't even have to, which you don't have to go this far to decide for the candidate here and to affirm, but my position would be, reading the cases, for example, some of the older cases that we cite, a person can go away for years, but his intent is still to remain in Chicago and still be a resident of Illinois and a resident of Chicago, and even though he doesn't have a residence here, he can still be legally a resident of Chicago, I mean, even though he doesn't have a structure here that he can go back to. If you have someone who doesn't have the money to maintain an apartment here but is working somewhere else but always intends to return here, but that's not our case, fortunately. What is the smallest case that you have for the proposition that a person can go and need not have any structure or residence here exclusive of people who leave to work for the government? The Carter case. The Carter case says, here, I'll tell you what they say in their brief about the Carter case. If I could find it quickly. In their reply brief on page 10, they say, Barrel reliance on Carter is misplaced, they say. And then they go on to recite the holding of the Carter case. Carter determined that an actual place of abode was not necessary to retain one's residence. The gentleman in the Carter case had no place to live in the election district. He lived with his father outside the election district. He had a business in the election district. Once in a while he stayed there as a hotel. They concede, in that statement, they concede that if you believe Carter has not been, unless you are convinced that Carter has been overruled, then Mr. Emanuel, forgetting the statute about the United States, Mr. Emanuel didn't need a house at all. That's what Carter says. Now, they say, well, Carter's conflicts are contacts. In Carter, did he need a permanent place of abode? No, I just read you what they said. He didn't. But the statute says he does. The statute says residence means a permanent place of abode. Go back. I misheard your question. Well, essentially what Carter was saying was a permanent place of abode means a lot of things. It doesn't mean a particular structure that you go into and that you have a place to sleep. It can mean that you have, at one point Carter was a resident. He had a permanent abode. Carter wasn't the name of the individual, but that's the person in that case. He had a permanent abode. He had a place where he lived in the town. His family moved out of the town. He went with them. But it was his intention of maintaining his residence. He had a business there. He stayed in a hotel there occasionally. He did not own a home there. That permanent abode was established, the first prong was established by the time that he did live there originally. So once you have a permanent place of abode in a municipality, you never lose it? Well, you lose it if you intentionally abandon it. Well, if you go live in another state and you only have a place to sleep, how can it be said you haven't abandoned it? Well, it can't be by saying, by the other elements of citizenship. So in that situation, you continue to pay taxes there. You continue to own real estate there. You register your car there. You vote there. You leave personal goods there. All of the things that they do. Do I have a right to vote there if I have no permanent place of abode there? Just because there's no property there? You have a permanent place of abode there. That's where you always lived. Again, abode, personal. So abode is a conceptual. Abode is residence. That's not a place. Abode is residence. Not a place. Abode is not a place. I think that it is in Park where the court says exactly that. Abode is a residence. Okay. In the Carter case, you're talking about Diggins had a store in the town of Ross, according to the appellant's brief that you're referencing, where he conducted his business, and he physically remained in Ross most of the day, and he kept some clothing at that store. That's correct. But he had another place of residence. He slept and he ate and he kept all of his personal belongings with his father in another town. Right. So that's what I'm saying is if you push the point, Carter says the candidate wouldn't even need the house. What does Pope mean, which is subsequent to Carter, when it says real, not imaginary, abode occupied as a home is essential to actual abode? Abode is a place where a person dwells. Can a person dwell conceptually, or do they have to actually have a place to put their bodies? It also says Pope and Park also say, as you pointed out, or to which he can return, which obviously means that he is somewhere else. But if you take that to its logical conclusion, anybody can return anywhere. I mean, if I leave the city of Chicago and go and live in Wisconsin, abandon my permanent abode here in Chicago, have no address to return to, and go to Wisconsin and say, but someday I'm coming back, your suggestion is I'm still a valid voter of Chicago. I'm saying that if you can show that your intention was never to abandon your residence, and you do that by showing where did you vote, where did you pay taxes. But hold on one second. The cases also say permanent place of abode and residence are synonyms. So it has to be a permanent place of abode. Can you have a permanent place of abode where there is no dwelling? No place to dwell. I'm not suggesting you can't have a permanent place of abode in a hotel. I'm not suggesting you can't have one wherever your bed is. But the question becomes if you have no dwelling, can it be said you still have a permanent place of abode? Now, Carter v. Putnam says yes. The statute says no. The statute says permanent place of abode equals residence. Pope, which is subsequent to Carter, says permanent place of abode requires a place to dwell, a place to live. Pope, by the way, doesn't purport to overrule Carter. Pope cites Carter, cites it approvingly. It says Carter holds a person by temporary removal of himself and his family into another state, your example, with the intention to return will not thereby lose his residence. No doubt about it. Pope says the same thing. That's what I'm quoting Pope. But the question, don't you have to have a permanent place of abode to return to? He's quoting Carter. Carter says no, and the court and Pope is saying? We agree with Carter. What does it mean when it says real, non-imaginary abode occupied as a home is essential? What does it mean in Pope when it says that? I think what it means to establish a residence, you need a permanent abode, some kind of a dwelling, a physical presence perhaps, but you need physical presence to establish your residence. But then it goes on to say, but you don't lose it by moving. No, you don't lose it by temporarily absenting yourself with an intent to return is what it says. Return where? Return to the residence. To the district. Anywhere in the city of Chicago. To anywhere within the election district. Absolutely. Absolutely. Can I throw you all back a little tiny bit to our facts? There is a building that Emmanuel owns here. I was hoping to get to that. Okay, so it's not a situation where there is not a building. That's correct. He owns the building. He lived there 10 or 11 years. He, everybody agrees, had a residence here. The issue I think the appellants have said is whether he abandoned that residence. This is my question. If you rent your residence out and you therefore do not have for a certain period of time a right to occupy, have you therefore, just because you can't walk into it any time you want to, have you abandoned your residence? If you have the intention, once that lease is over, to come back to your residence. Justice Lampkin, the first case we cite, one of the first reported cases on this subject is the Smith case. The gentleman there who was a candidate, was elected judge, rented his home. Went to another state. And rather than be a debilitating factor, the Supreme Court of Illinois relied on the fact that he rented his home to demonstrate that he intended to return. It was evidence of his intent to return. It was a positive fact, not a negative fact. Well, then my question is, do you have to have a right to occupy it any day that you want to in order to maintain your residence or do you abandon it if you can't go into it any time you want to because you've rented it? Smith says no, Your Honor, and... Did Smith really say that? Smith was a poor rental suit and it was decided based upon a presumption with a burden of proof that is entirely different than in this case. In Smith, the burden of proof was clear and convincing and the court said that the objectors had not overcome the presumption. There's no presumption here. There is absolutely no presumption that attaches in this case whatsoever. There's a high burden of proof, but Smith still says... Where's the high burden of proof? What's the burden of proof? But if Smith thought that it was necessary to have a home, a boat that you could immediately return to, it would have been decided differently. It would have had to have been. According to Mr. Olson, it would have had to have been decided differently. And he concedes that. That's why he argues it's been overruled. And, of course, we can't find any case overruling it. Let me bring you back to the statute 3.110-5. It requires that to be eligible for municipal office, then a candidate has to have resided in the municipality for at least one year next preceding the election. Is it your position, does that statute not indicate that for one to hold a position in a municipality that is a higher standard than to be a voter, which we have already established only requires 30 days in order to reside in that particular district to vote, but to be an elected candidate in a municipality resides one year residency in order to be a candidate? And so isn't that a higher standard that the candidate in this case would be held to, rather than all of these various voter elections? Well, he's subject to both. He has to be a voter. You have to be a resident for 30 days. And to be a candidate for municipal office, you have to be a resident for a year. And he clearly satisfied both. Let me get to another section. How does he satisfy both if he did not live in, reside in, in the municipality that he is choosing to represent, if he did not live in that place for the year that is required? And you'll recall previously this was required by the Illinois Constitution and not by statute. It did not change. It's still one year. The residence requirement is satisfied by the teachings of all of these cases that say you do not lose your residence. We are certain he was a resident. And you do not lose your residence by temporary absence so long as you do not indicate an intent to abandon that residence. Let me give you a word. What does D mean? What does D mean? Why is it here? Let's take a look at D. I think D protects people where there's every other indication that they abandoned. But that's not what the sponsor of the legislation said on the floor of the Illinois Senate. Sponsor of the legislation said he put in that bill, I think it was Senate Bill 252 in 2007, he put it in for one reason and only one reason. So that when his constituents went to Iran or Iraq, they could return back to his district and they could run for public office and not be deemed to have abandoned their residence merely because they were gone. And that's the language of D. Language of D says he is a resident of the municipality prior to military service, resides anywhere outside the municipality, and then after military service is again a resident. Mr. Fore, your time has expired. Please answer the Justice's question. Your time has expired. May I have, after I answer that question, may I continue? I didn't complete an answer. Justice Lampkin, please. Your time has expired. So you need to choose which one is Justice Hoffman's question. No, you don't. I know my answer. Answer Justice Hoffman's question, please. You can have a situation where a serviceman, and we use an example in our brief, goes to New Jersey and registers his car there, boats there, does all the other indications. I understand. And that means he abandoned his residence and took up permanent residence elsewhere. And he'd still be protected. How many people does that apply to, Tim? I don't know. I don't know. That's not what the sponsor said. The sponsor said he's protecting people that are going to Iran and Iraq. You're not suggesting that a serviceman can become an established permanent place of a boat in Iraq, are you? No. What I'm saying is before they go to Iran and Iraq, they may be at Fort Benning or somewhere else in another state, and they may bring their wife with them, and they may bring a car with them. He's just giving them a belt and suspenders. But when you look at, and you talked about it earlier, no matter what all this debate about residence and this question, all of this debate is completely academic. If you determine that 3.2 applies, there is absolutely no question that the candidate was temporarily absent on the business of the United States. If that statute applies, that's the coup de grace here. You don't even have to look at the other stuff. But we hope you'll deal with both questions. Thank you. Thank you, Counsel. Rebuttal? If 3.2 applies, is it over? No. Why? It's not over because I contend he's not on business of the United States. The business of the United States. No, we're past that. All right. If he's on business of the United States and 3.2 applies, is it over? Yeah, it's over. It's over for candidate purposes? 3.2 applies to a voter. The municipal code applies to qualifications for office. It's two distinct things. You can't even read them. So then it's not over. So it's not over. Right. Is it over or is it not over? It's not over. You agreed with me. You know. Counsel, you'll give me a chance to clarify. The Delaview case is the candidate case that I think speaks directly to the issues raised by the justices because it says residents requires physical presence in the district with the intention that such presence be permanent. That's a recent case. So is the Condon case and the Dell case. Those were three candidate cases that we recited in our brief that we say are right there where we need them to be. The point Justice Hoffman raised, which I would have liked to have gotten to, is that that Smith case was in 1867. After that, a few things happened. We had the 1870 Constitution. We had the 1872 enactment by the General Assembly of the law that remains intact today, which is 3.1-10.5 of the Municipal Code. It has not changed since 1872. You have to be a qualified elector and you have to reside in the municipality one year preceding the election. I would submit to the justices that if this case was not about who it's about and about the office we're talking about, this case wouldn't even be here today. This is a very clean, clear-cut residency case that we try as election lawyers every election cycle. The man got some bad advice and rented his place out. He didn't have a place to come back to. He didn't have a residence for one year prior to the election. We cannot mix up the Election Code and the Municipal Code. They each have their own purposes. They each have their own exclusion. And what Justice Hoffman said is absolutely correct. There's no need for the exception D for military duty if it's all about intent. You can go for 50 years. As long as you have an intent to come back after you've retired from the Army, then you're a resident and you can run for office. D was put into effect in 2007 exactly for the purpose of protecting our people who go overseas and want to come back and run for office. But they haven't lost their residency that they gave up to serve the people of the United States. I would just finally say you cannot compare service to the United States of our soldiers to chief of staff of the President of the United States. Not mine, not mine. Not when you make $172,000 a year versus dodging bombs in Iran and Iraq. We would submit that the board's decision was incorrect. We would ask this appellate court to reverse the decision of the board and grant the objection. Thank you. Thank you, counsel. This matter was well briefed, well argued. This case will be taken under advisement. This court is adjourned.